IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

| | | |
|---|---|---|
| INTERNATIONAL PAPER COMPANY, INC., | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | CASE NO. 3:09-CV-347-WKW [WO] |
| QBE INSURANCE CORPORATION, *et al.*, | ) ) ) ) | |
| Defendants. | ) | |

_____

| | | |
|---|---|---|
| QBE INSURANCE CORPORATION, | ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | CASE NO. 3:07-CV-206-WKW |
| INTERNATIONAL PAPER COMPANY INC., *et al.*, | ) ) ) ) | |
| Defendants. | ) | |

_____

| | | |
|---|---|---|
| CANAL INSURANCE COMPANY, | ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | CASE NO. 3:05-CV-1001-WKW |
| HOWARD GRIGGS TRUCKING, INC., *et al.*, | ) ) ) ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

This consolidated action arises out of an accident that occurred at Plaintiff International Paper Company, Inc.'s ("IP") facility in Lee County, Alabama, on May 5, 2005. The injured party brought suit against IP in state court, and IP now claims that Defendants QBE Insurance Corporation ("QBE") and/or Canal Insurance Company ("Canal") breached their obligations under their respective insurance agreements by failing to defend and indemnify IP in the underlying state court action.[1]

This cause is before the court on QBE's and IP's cross-motions for summary judgment in the lead case, *International Paper Co. Inc. v. QBE Insurance Corp.*, No. 3:09-cv-347.[2] (Docs. # 21, 26.) Upon careful consideration of counsel's arguments, the relevant law, and the record as a whole, the court finds that QBE's motion for summary judgment on its declaratory judgment claim against IP (Doc. # 21) is due to be denied, IP's motion for summary judgment on its breach of contract claim against QBE (Doc. # 26) is due to be granted, and IP's alternative motion for summary judgment on its breach of contract claim against Canal (Doc. # 26) is due to be denied.

---

[1] IP also brings a claim for bad faith against QBE, which is not at issue at this stage of the litigation.

[2] The other two related cases – *QBE Ins. Corp. v. Int'l Paper Co. Inc.*, Case No. 3:07-cv-206 and *Canal Ins. Co. v. Howard Griggs Trucking, Inc.*, No. 3:05-cv-1001 – have been stayed pending resolution of the underlying state action. Hereinafter, any reference to "this case" is to *International Paper Co. Inc. v. QBE Ins. Corp.*, No. 3:09-cv-347.

## I.  JURISDICTION AND VENUE

Subject matter jurisdiction is exercised pursuant to 28 U.S.C. §§ 1332, 1441, and 1446.  The parties do not contest personal jurisdiction or venue, and the court finds adequate allegations in support of both.

## II.  PROCEDURAL AND FACTUAL BACKGROUND

This case stems from QBE's and Canal's refusal to defend and indemnify IP in the underlying state court action.  The parties submitted the following undisputed facts.

### A.  Underlying State Action

Sometime prior to May 2005, IP and Howard Griggs Trucking, Inc. ("Griggs") entered into a Flatbed Motor Carrier Agreement ("FMCA"), under which Griggs was to transport lumber for IP.  (FMCA (Doc. # 21, Ex. I).)  Pursuant to this contract, IP was to be designated an "additional insured" under Griggs' liability policies with QBE and Canal. (FMCA, § 12.)

On May 5, 2005, Ernest Ellington, an employee of Griggs, was injured while his truck was being loaded at the IP facility.  Specifically, a forklift operated by an IP employee struck and pinned Mr. Ellington against the flat-bed trailer of Mr. Ellington's truck while transporting lumber for loading.

Mr. Ellington filed the underlying state action on July 8, 2005, alleging that his injuries were the result of IP's negligent and wanton acts.  IP, after requesting and being

3

refused defense and indemnification from QBE (*see* Am. Third Party Compl. ¶¶ 5-7 (Doc. # 1, Attach. 7), defended the suit and settled it for $700,000.

**B.     Severed Claims**

During the pendency of the state court tort action, IP filed breach of contract and bad faith claims against QBE for QBE's failure to defend and indemnify IP. QBE then filed a declaratory judgment claim against Canal, requesting a declaration that Canal, and not QBE, owed defense and indemnification to IP. IP promptly amended its complaint, adding a claim for breach of contract against Canal. Canal subsequently filed a declaratory judgment counterclaim against IP and crossclaim against QBE, seeking a declaration that it did not owe defense or indemnification to IP. These claims were severed from the state court action and removed to this court on April 16, 2009. (Notice of Removal (Doc. # 1).)

Pending in state court is a crossclaim by IP against Griggs for defense and indemnification pursuant to the indemnification provision of the FMCA, a declaratory judgment crossclaim by Griggs against IP, a claim by Griggs against Canal for defense and indemnification, and a separate action by Griggs against QBE for defense and indemnification. (*See* Order Granting Mot. to Sever (Doc. # 1, Attach. 13).)

**C.     Insurance Policies**

Griggs maintained two separate insurance policies that were in effect at the time of Mr. Ellington's accident, both of which include endorsements naming IP as an "additional insured." The endorsements limit coverage to liability arising out of Griggs' ongoing

4

operations performed for IP. (QBE policy (Doc. # 21, Ex. I); Canal policy (Doc. # 25, Ex. C).) The policy issued to Griggs by QBE ("the QBE policy") is a commercial general liability insurance policy bearing policy no. ANM17676. The policy issued to Griggs by Canal ("the Canal policy") is a commercial automobile policy bearing policy no. 469907. The policies have various coverage provisions, terms, conditions, limitations, and exclusions that form the bases of this lawsuit.

In general, the QBE and Canal policies provide interlocking coverage – what one excludes, the other covers. Most relevant to this lawsuit are the policy exclusions related to the use of a mechanical device in loading and unloading trucks. The QBE policy excludes from commercial liability coverage any injury resulting from loading and unloading, but provides an exception to that exclusion for injury resulting from the movement of property by means of a mechanical device. The Canal policy, on the other hand, covers liability resulting from loading and unloading, but excludes from commercial automobile coverage any injury resulting from the movement of property by a mechanical device. These, as well as several other relevant contractual provisions, are discussed further below.

### III. STANDARD OF REVIEW

"Summary judgment is appropriate 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.'" *Greenberg v. BellSouth Telecomms., Inc.*, 498 F.3d 1258, 1263 (11th Cir.

2007) (*per curiam*); Fed. R. Civ. P. Rule 56(c). The party moving for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record, including pleadings, discovery materials and affidavits], which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The movant may meet this burden by presenting evidence indicating there is no dispute of material fact or by showing that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. *Id.* at 322-24.

If the movant meets its evidentiary burden, the burden shifts to the nonmoving party to establish, with evidence beyond the pleadings, that a genuine issue material to each of its claims for relief exists. Fed. R. Civ. P 56(e)(2); *Celotex Corp.*, 477 U.S. at 324; *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991). What is material is determined by the substantive law applicable to the case. *Celotex Corp.*, 477 U.S. at 248. "The mere existence of some factual dispute will not defeat summary judgment unless that factual dispute is material to an issue affecting the outcome of the case." *McCormick v. City of Fort Lauderdale*, 333 F.3d 1234, 1243 (11th Cir. 2003) (*per curiam*) (internal quotation marks and citation omitted).

A genuine issue of material fact exists when the nonmoving party produces evidence that would allow a reasonable fact-finder to return a verdict in its favor. *Greenberg*, 498 F.3d at 1263; *Waddell v. Valley Forge Dental Assocs.*, 276 F.3d 1275, 1279 (11th Cir. 2001).

6

However, if the evidence on which the nonmoving party relies "is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986) (citations omitted). "A mere 'scintilla' of evidence supporting the [nonmovant's] position will not suffice; there must be enough of a showing that the [trier of fact] could reasonably find for that party," *Walker v. Darby*, 911 F.2d 1573, 1577 (11th Cir. 1990), and the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Conclusory allegations based on subjective beliefs are likewise insufficient to create a genuine issue of material fact and do not suffice to oppose a motion for summary judgment. *Holifield v. Reno*, 115 F.3d 1555, 1564 n.6 (11th Cir. 1997) (*per curiam*). Hence, when a plaintiff fails to set forth specific facts supported by appropriate evidence sufficient to establish the existence of an element essential to his case and on which the plaintiff will bear the burden of proof at trial, summary judgment is due to be granted in favor of the moving party. *Celotex Corp.*, 477 U.S. at 323.

## IV. DISCUSSION

A.  **Alabama Insurance Law**

Insurance contracts are governed by the general rules of contracts and "are construed so as to give effect to the intention of the parties." *Attorneys Ins. Mut. of Ala., Inc. v. Smith, Blocker & Lowther, P.C.*, 703 So. 2d 866, 870 (Ala. 1996). Alabama law is clear that "insurance companies have the right, in the absence of statutory provisions to the contrary,

to limit their liability and write policies with narrow coverage; the insured has the option to purchase the policy or look elsewhere." *Cotton States Ins. Co. v. Diamond Hous. Mobile Homes*, 430 F. Supp. 503, 505 (N.D. Ala. 1977).

The question of whether a contractual provision is ambiguous is a matter of law for the court to decide. According to Alabama law, "[i]f the terms within a contract are plain and unambiguous, the construction of the contract and its legal effect become questions of law for the court and, when appropriate, may be decided by a summary judgment." *McDonald v. U.S. Die Casting & Dev. Co.*, 585 So. 2d 853, 855 (Ala. 1991). However, if the contractual provisions at issue are ambiguous, "the determination of the true meaning of the contract is a question of fact" for the jury. *Id.* To determine whether a provision in an insurance contract is ambiguous, the court applies "the common interpretation of the language alleged to be ambiguous." *State Farm Fire & Cas. Co. v. Slade*, 747 So. 2d 293, 309 (Ala. 1999). Ambiguity exists "only if the policy's provisions are reasonably susceptible to two or more constructions or there is reasonable doubt or confusion as to their meaning." *Id.* at 308-09. "This means that the terms of an insurance policy should be given a rational and practical construction" and should not be considered in isolation. *Id.* at 309.

Here, rather than contesting the meaning of the various contractual terms and provisions,[3] the parties dispute the application of those provisions to the undisputed facts of

---

[3] *See* Canal Resp. Br., at 6 (Doc. # 25) ("Because neither the facts of the case nor the terms of the insurance policies are in dispute, the court should be able to determine, as a matter of law[,] whether QBE is entitled to summary judgment.").

this case. The court will first address QBE's motion for summary judgment and whether any provision in the QBE policy precludes coverage for IP under the undisputed facts of this case. Because the court finds that the QBE policy does extend coverage to IP, the court will then address IP's motion for summary judgment and whether QBE breached the contract by failing to defend and indemnify IP in the underlying state action.[4]

### B.   **QBE's Motion for Summary Judgment**

#### 1.   *Applicability of the Additional Insured Endorsement*

As a threshold matter, QBE contends that the endorsement naming IP as an additional insured does not extend coverage to the facts of this case because Mr. Ellington's injury did not "arise out of" Griggs' operations performed for IP. The express language of the endorsement in the QBE policy is as follows: "Who Is An Insured (Section II) is amended to include as an insured the person or organization shown in the Schedule [IP], but only with respect to liability arising out of your [Griggs'] ongoing operations performed for that insured [IP]." (QBE policy, CG 20.10.03.97.) QBE argues that because the contract that governed Griggs' performance for IP (the FMCA) did not require Griggs to physically load and unload the trucks, IP was merely performing its own obligations under the contract by doing so. In other words, QBE contends that Griggs' responsibilities under the FMCA were limited to transporting the loads, and because the accident was caused by an IP employee

---

[4]Although IP's motion, like QBE's motion, deals primarily with the issue of coverage, it does so in the context of whether QBE or Canal breached its contractual obligations to defend and indemnify IP.

who was in the process of loading the trucks, the endorsement does not apply and IP does not have coverage. QBE's argument falters in two respects.

First, Griggs' duties under the FMCA are not as limited as QBE contends. In addition to delivery services, the FMCA states that Griggs is responsible for "load securement," and "will furnish tarpauline, tie down devices *and labor to secure and protect* the lading for safe and damage-free transportation." (FMCA, §§ 3, 4.D (emphasis added).) "Load securement" necessarily entails proper loading. Thus, although an IP employee was driving the forklift and transporting the materials for loading at the time of the accident, Mr. Ellington had at least some responsibility for ensuring that the materials were loaded properly. Moreover, the court notes that QBE relies on the FMCA to define Griggs' responsibilities to IP, but has not pointed to any language in the FMCA specifying IP's responsibilities, or that IP solely was responsible for loading and unloading the trucks. In fact, the evidence shows that employees for both IP and Griggs were involved in loading on this particular occasion. Rather than waiting passively in his truck or off to the side, Mr. Ellington was injured while standing near, and perhaps aiding,[5] in the loading process. Thus, both the language in the FMCA and the evidence of this particular accident indicate that the loading of the materials was part of the larger transportation operation that Griggs performed for IP.

---

[5] QBE's contention that Mr. Ellington stood apart from the loading process (on the opposite side of the truck) is contradicted by the fact of the injury. Moreover, QBE cites evidence that IP's forklift driver's "general process" was to allow drivers like Mr. Ellington to assist in the loading process by placing dunnage. (*See* Doc. # 53, at 8-9 (citing Newman Dep. 27 (Doc. # 53, Ex. H)).)

Second, the language of the endorsement in the QBE policy belies QBE's narrow interpretation of that provision. The endorsement does not state that the injury must be *caused* by Griggs' performance for IP; rather, the injury must simply "*arise out of* ongoing operations performed" by Griggs for IP. (QBE policy, CG 20.10.03.97 (emphasis added).) QBE does not contend that this language is ambiguous, urging instead that "[t]he meaning of 'arising out of' should not trouble the Court in its adjudication of this matter." (QBE Summ. J. Br., at 19 n.1 (Doc. # 22).) In support of this contention, QBE cites an Eleventh Circuit opinion interpreting Florida contract law, which held that "the phrase 'arising out of' is not ambiguous and should be interpreted broadly." *Monticello Ins. Co. v. City of Miami Beach*, No. 06-20459-CIV, 2009 WL 667454, at *11 (S.D. Fla. Mar. 11, 2009). As QBE acknowleges, the phrase "arising out of" simply requires that the additional insured's (IP's) negligent acts "*are connected to* the named insured's [Griggs'] operations performed for the additional insured [IP]." *Id.* (emphasis added); *see also Taliaferro v. Progressive Specialty Ins. Co.*, 821 So. 2d 976, 980 (Ala. 2001) ("'[T]he term "arising out of the use" in liability policies has generally been held to be a broad, comprehensive term meaning "origination from," "having its origin in," "growing out," or "flowing from."'" (quoting *Travelers Ins. Co. v. Aetna Cas. & Sur. Co.*, 491 S.W.2d 363, 365 (Mo. 1973))).

There can be no serious contention that Mr. Ellington's injury was not "connected to" Griggs' performance under the FMCA. Loading and unloading the trucks was an essential component of the process, without which Griggs would have nothing to transport. And, as

11

discussed above, Griggs was necessarily involved in that process. Whether it was Griggs' contractual duty to drive the forklift or physically load the materials into the truck is irrelevant; the injury occurred during the process of loading and securing the load for transportation and thus arose out of (*i.e.*, was "connected to") Griggs' obligation to transport and ensure securement of the load.

Accordingly, the endorsement in the QBE policy applies to the facts of this case, and QBE's motion for summary judgment on this basis is due to be denied.

### 2. *Applicability of the Automobile Exclusion*

QBE next contends that its automobile exclusion excludes coverage under the facts of this case. The automobile exclusion in the QBE policy excludes: "'Bodily injury' or 'property damage' arising out of the ownership, maintenance, use or entrustment to others of any aircraft, 'auto' or watercraft owned or operated by or rented or loaned to any insured." (QBE policy, CG 00.01.07.98, § I.2.g.) The term "use" includes "loading or unloading." (QBE policy, CG 00.01.07.98, § I.2.g.) The definition of "loading or unloading" exempts "the movement of property by means of a mechanical device, other than a hand truck, that is not attached to the aircraft, watercraft or 'auto.'" (QBE policy, CG 00.01.07.98, § V.11 (hereinafter, "the mechanical device exception to the automobile exclusion").)

QBE's sole argument as to why the mechanical device exception to the automobile exclusion does not apply to IP is that an IP employee, not a Griggs employee, was driving the forklift at the time of the injury. The court need not deliberate long on this issue, as the

language of the policy is clear, and the facts undisputed. Mr. Ellington was injured when pinned by a forklift – a "mechanical device" – during the loading process. The automobile exclusion, which excludes injury resulting from loading and unloading, applies to "*any* insured." Because the additional insured endorsement clearly states that IP is "include[d] as an insured," the automobile exclusion applies to IP. Because the exclusion applies to IP, the definitions of the terms used in the exclusion necessarily apply to IP. Hence, the mechanical device exception, which defines "loading or unloading," applies to IP. This exception exempts from the definition of "loading or unloading" "the movement of property by means of a mechanical device" – which is exactly what happened here. Nowhere in the mechanical device exception to the automobile exclusion does it require that "the named insured" (*i.e.*, Griggs, through Mr. Ellington), and not the "additional insured" (*i.e.*, IP), be driving the forklift for the exception to apply. Thus, the mechanical device exception to the automobile exclusion in the QBE policy applies to IP on the facts of this case; the automobile exclusion, therefore, does not exclude coverage for IP; and QBE's motion for summary judgment on this basis is due to be denied.

### 3. *Applicability of the Contractual Liability Exclusion*

QBE raises the additional argument that the contractual liability exclusion excludes coverage in this case. This particular provision excludes coverage for injuries "for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement." (QBE policy, CG 00.01.07.98, § I.2.b.) QBE quotes the indemnity provision

13

in the FMCA as evidence that the contractual liability exclusion excludes coverage in this case.[6] However, the relevant "insured" in this case is IP, not Griggs.[7] Thus, when the contractual liability exclusion speaks of "the insured['s] obligat[ion] to pay damages," it is referring to *IP*'s obligation to indemnify Griggs. QBE relies on the indemnity provision in the FMCA relating to Griggs' responsibilities to indemnify IP, not vice versa. There is no contract or agreement under which IP is "obligated to pay damages by reason of the assumption of liability." Accordingly, the contractual liability exclusion in the QBE policy does not exclude coverage in this case, and QBE's motion for summary judgment is due to be denied on this basis.[8]

---

[6] The indemnity provision in the FMCA states as follows: "Indemnity for Claims of Carrier's Employees, Agent[s] and Subcontractors. CARRIER shall indemnify, defend and hold harmless SHIPPER from and against all liability, loss, damages, claims, suits or expenses, including reasonable attorney['s] fees, of CARRIER's employees, agents and subcontractors, by reason of any injury (including death) or claim of injury to person or property arising out of or in connection with the performance of this AGREEMENT. CARRIER shall have no liability to SHIPPER under this paragraph if SHIPPER'S sole negligence or willful misconduct is the proximate cause of the injury to person or property." (FMCA, § 13.B.) The term "shipper" refers to IP; the term "carrier" refers to Griggs. (FMCA.)

[7] As discussed above, the term "insured" includes "any person or organization qualifying as such under Section II – Who Is An Insured." The endorsement naming IP as an "additional insured" amends Section II to "include [IP] as an insured." In addition, the "Separation of Insureds" provision in the QBE policy expressly states that "this insurance applies . . . [a]s if each Named insured were the only Named insured."

[8] In its response to IP's motion for summary judgment, QBE argues that the "employee exclusion" excludes coverage for IP in this case. (Doc. # 35.) The court will not consider arguments raised for the first time in a response brief. However, even if the court were to consider this argument, it would find it to be frivolous, as the caselaw upon which QBE relies is clearly distinguishable.
   The "employee exclusion" excludes coverage for bodily injury to "[a]n 'employee' of the Insured arising out of and in the course of: (a) Employment by the insured; or (2) Performing duties related to the conduct of the Insured's business." (QBE policy, CG 00.01.07.98, § I.2.e.) QBE contends that this exclusion excludes coverage to *Griggs* because Mr. Ellington was an employee of Griggs at the time of his injury. QBE then argues that because the exclusion excludes coverage to Griggs, it also excludes coverage to IP. However, the case upon which QBE relies in making this assertion, *Vitas Healthcare*

### 4.     *Applicability of the Mechanical Device Exclusion in the Canal Policy*

QBE further contends the QBE policy "is not triggered" because it only provides "excess coverage," and that the Canal policy provides primary coverage to IP in this case. However, the Canal policy excludes from coverage "bodily injury or property damage resulting from the movement of property by mechanical device (other than a hand truck) unless the device is attached to an owned auto or temporary substitute automobile." (Canal policy, § A (Doc. # 25, Ex. A).) As discussed above, it is undisputed that Mr. Ellington was injured by a mechanical device (a forklift) that was not attached to his truck. The mechanical device exclusion in the Canal policy thus applies to exclude coverage under the Canal policy, and QBE's motion for summary judgment on this basis is due to be denied.

**C**.    **IP's Motion for Summary Judgment**

IP moves for summary judgment on its breach of contract claim against QBE, or, in the alternative, against Canal. Having determined that the QBE policy insures IP as an additional insured, and having found that it does not exclude coverage for IP on the undisputed facts (and that the Canal policy does exclude coverage for IP), the court now

---

*Corp. v. Evanston Ins. Co.*, 303 F. App'x 856 (11th Cir. 2008), is expressly limited to the rare situation in which the insurance policy at issue does not contain a "severability clause." The QBE policy at issue here clearly has such a clause. The "Separation Of Insureds" provision in the QBE policy states that "this insurance applies: a. As if each Named Insured were the only Named Insured; and b. Separately to each insured against whom claims made or 'suit' is brought." (QBE policy, CG 00.01.07.98, § IV.7.) Thus, IP's claims against QBE must be analyzed without regard to Griggs, and QBE's motion for summary judgment on this basis would be denied.

considers whether QBE breached the insurance contract by failing to defend and indemnify IP in the underlying state action.[9]

The QBE policy states that QBE "will pay those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' . . . to which this insurance applies. We will have the right and duty to defend the insured against any 'suit' seeking those damages." (QBE policy, CG 00.01.07.98, § I.1.a.)  Thus, the policy includes both the duty to indemnify and the duty to defend. *See Tanner v. State Farm Fire & Cas. Co.*, 874 So. 2d 1058, 1063 (Ala. 2003) ("Liability insurance coverage includes two separate duties: (1) the duty to defend; and (2) the duty to indemnify.").

### 1. *Duty to Defend*

Under Alabama law, "it is well established that [an] insurer's duty to defend is more extensive than its duty to pay." *U.S. Fidelity & Guar. Co. v. Armstrong*, 479 So. 2d 1164, 1168 (Ala. 1985). "[T]he duty to defend arises when the original complaint alleges a state of facts within the coverage of the policy." *Id.*  Here, there is no doubt that the complaint alleged facts adequate to trigger QBE's obligation to defend the underlying state action. Mr. Ellington's complaint against IP and Griggs alleged that Mr. Ellington, an employee of Griggs, "went to pick up lumber" from the IP facility. (State Compl. ¶¶ 7-8, (Doc. # 21, Ex.

---

[9] The court notes that the parties did not brief this particular issue. Instead, they devote the entirety of their arguments to the issue of coverage. The parties assume that a resolution of the coverage issue necessarily resolves the breach issue. Practically speaking, given that the facts are undisputed, the parties may be correct in this assumption. Nonetheless, the court will address and analyze the issue of breach separately from the issue of coverage.

A).)  While at the IP facility, Mr. Ellington alleged that an IP employee negligently and wantonly "used a forklift to load the trailer of the truck driven by Plaintiff," and that "[w]hile loading the trailer, the forklift pinned Plaintiff between the forklift and the trailer."  (State Compl. ¶¶ 9-10, 15-19.)  These allegations specify "a state of facts within the coverage of the policy." *Armstrong*, 479 So. 2d at 1168.  The complaint put QBE on notice that an injury occurred during the course of Griggs' operations for IP and that the mechanical device exception to the automobile exclusion applied.  As discussed in detail above, QBE has failed to indicate any other provision that excludes coverage in this case.  Accordingly, QBE had a duty to defend IP in the underlying state action and breached its obligation to do so when it denied such a defense.

### 2. *Duty to Indemnify*

"Although the bare allegations of the complaint may trigger an insurer's duty to defend its insureds, [t]he duty to pay . . . must be analyzed separately." *Tanner*, 874 So. 2d at 1066 (internal quotations omitted).  "The insured's conduct rather than the allegedly injured person's allegations determine whether the insurer has a duty to indemnify." *Id.*  The duty to indemnify arises only after the underlying case is resolved. *See Hartford Cas. Ins. Co. v. Merchants & Farmers Bank*, 928 So. 2d 1006, 1013 (Ala. 2005) ("Whether there is a duty to indemnify under the policy will depend on the facts adduced at the trial of the action . . . ."); *Canal Ins. Co. v. Cook*, 564 F. Supp. 2d 1322, 1325 (M.D. Ala. 2008) (noting that

the "determination as to indemnification is premature" where the issue of liability has not yet been determined).

Here, the underlying state tort action was resolved when IP and Mr. Ellington settled for $700,000. As discussed above, the undisputed facts establish that the QBE policy covers IP under the facts of this case. Thus, QBE breached its indemnification obligation by failing to indemnify IP after the underlying state action was settled. *See Titan Indem. Co. v. Riley*, 679 So. 2d 701, 705 (Ala. 1996) ("[I]f the conduct giving rise to this dispute was covered as to [the defendant's] duty to defend, that same conduct also provides the basis for imposing on [the defendant] a duty to indemnify.").

Accordingly, the court finds that QBE breached its contractual obligations to defend and indemnify IP in the underlying state action, and IP's motion for summary judgment is due to be granted.[10]

## V. CONCLUSION

Based on the foregoing, it is ORDERED as follows:

1. QBE's motion for summary judgment on its declaratory judgment claim against IP (Doc. # 21) is DENIED;

2. IP's cross-motion for summary judgment on its breach of contract claim against QBE (Doc. # 26) is GRANTED;

---

[10] *Accord Great West Cas. Co. v. Cooper*, No. 156, 7:08-cv-1159-LSC (N.D. Ala. Mar. 9, 2010).

3.   IP's alternative motion for summary judgment on its breach of contract claims against Canal (Doc. # 26) is DENIED;

4.   QBE owes IP all appropriately recoverable expenses incurred by IP as a result of QBE's breach of contract; and

5.   Remaining in case No. 3:09-cv-347 is IP's claim for bad faith against QBE.

DONE this 5th day of May, 2010.

                /s/ W. Keith Watkins
      UNITED STATES DISTRICT JUDGE